**TREEHOUSE LAW, LLP**
Joseph Hakakian (SBN 323011)
Benjamin Heikali (SBN 307466)
Ruhandy Glezakos (SBN 307473)
Joshua Nassir (SBN 318344)
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948
jhakakian@treehouselaw.com
bheikali@treehouselaw.com
rglezakos@treehouselaw.com
jnassir@treehouselaw.com

*Attorneys for Plaintiff and the Putative
Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA JEAN PITRE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OAKBERRY ACAI INC.,<br><br>Defendant. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Yolanda Jean Pitre ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, brings this Class Action Complaint against Oakberry Acai Inc. ("Defendant" or "Oakberry"), based upon personal knowledge as to herself, and upon information, investigation and belief of her counsel.

## INTRODUCTION

1.    This class action lawsuit seeks to challenge Defendant's false and deceptive practices in the marketing and advertising of Oakberry's açaí products (collectively, the "Products"). Specifically, the Products include the following: (1) Classic Bowl; (2) Works Bowl; (3) The Oak Bowl; (4) The Original; (5) Crunchy Bowl: (6) Tropical Beats Smoothie; (7) Hydration Booster Smoothie; (8) Very Berry Smoothie; (9) PB& Jam Smoothie; (10) Power Punch Smoothie; (11) Purple Fuel Smoothie; (12) Zen Matcha Smoothie; (13) Blue Fairy Smoothie; (14) Super Glow Smoothie; (15) Coffee Punch Smoothie; (16) Bliss Bowl; (17) Mango In Love Bowl; (18) Crazy 4 Mango Bowl; (19) Crunch Bowl; (20) Fruity Bowl; (21) Golden Almonds Bowl; (22) Tiger Bowl; (23) Shred Bowl; (24) Super Berry Spritz Refresher (25) Oak Palmer; (26) Shaken Purple Lemonde; (27) Açaí Bucket; (28) Açaí & Peanut Butter Oakbar; (29) Açaí & Banana Oakbar; (30) Açaí & Coconut Oakbar; and (31) Build Your Own Smoothie.

2.    Oakberry has marketed the Products in a false and misleading manner, representing its Products as "All Natural" and "Free from Preservatives".

3.    Despite Oakberry's "All Natural" and "Free from Preservatives" marketing and advertising, and unbeknownst to consumers, the Products contain citric acid. Citric acid is an artificial preservative and flavoring made through the fermentation of *Aspergillus niger*, a type of black mold.[1] Thus, the Products are not "All Natural" and "Free from Preservatives".

///

---

[1] https://www.sciencedirect.com/topics/biochemistry-genetics-and-molecular-biology/citric-acid

4.     Plaintiff and other consumers purchased the Products and paid a premium price based upon their reliance on Defendant's "All Natural" and "Free from Preservatives" marketing and advertising. Had Plaintiff and other consumers been aware that the Products contain artificial preservatives, they would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiff and Class members have been injured by Defendant's deceptive business practices.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure in that: (1) there are more than 100 Class members; (2) the parties are minimally diverse, as Defendant is a citizen of a state different from at least some members of the proposed class, including Plaintiff; and (3) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs. The Products are sold at numerous retail stores and Plaintiff is seeking to represent a nationwide class. Thus, there are over 100 members in the proposed class and the proposed class has different citizenships from Defendant. Plaintiff seeks compensatory and statutory damages, disgorgement and restitution. Plaintiff also seeks punitive damages and attorneys' fees and costs. Thus, Plaintiff estimates that the amount in controversy exceeds $5 million.

6.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California through its sale of the Products and other goods in California, to California consumers. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California, specifically in this county. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this

1  lawsuit because it has sold deceptively advertised Products to Plaintiff and members

2  of the Class in California. By distributing and selling the Product in California,

3  Defendant has intentionally and expressly aimed conduct at California which caused

4  harm to Plaintiff and the Class that Defendant knows is likely to be suffered by

5  Californians.

6      7.    Venue is proper in this judicial District pursuant to 28 U.S.C. §

7  1391(b)(2) because a substantial part of the events or omissions giving rise to

8  Plaintiff's claims occurred in this District. Plaintiff resides in this District and she

9  purchased one of the Products in this District during the statute of limitations period.

10                              **PLAINTIFF**

11      8.    Plaintiff is a citizen of California and currently resides in San Mateo,

12  California. In or around April 2024, Plaintiff purchased Defendant's Oakberry's

13  Classic Açaí Bowl from an Oakberry store in Los Angeles, California. Based on the

14  representations outlined above, Plaintiff reasonably believed that the Product was all

15  natural and free from preservatives. Had she known that the Product was not all

16  natural and contained preservatives, she would not have purchased it or would have

17  paid significantly less for it. As such, Plaintiff has been directly financially injured by

18  Defendant's false and misleading marketing and advertising.

19      9.    Despite Defendant's misrepresentations, Plaintiff would purchase the

20  Products, as advertised, if they were all natural and free from preservatives. Absent

21  an injunction of Defendant's deceptive marketing and advertising, she will be unable

22  to rely with confidence on Defendant's marketing and advertising of the Products in

23  the future. Furthermore, while Plaintiff currently believes the Products' marketing and

24  advertising is inaccurate, she lacks personal knowledge as to Defendant's specific

25  business practices, and thus, she will not be able determine whether the Products truly

26  are all natural and free from preservatives. This leaves doubt in her mind as to the

27  possibility that at some point in the future the Products could be made in accordance

28  with the representations on the Products' marketing and advertising. This uncertainty,

coupled with her desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the alleged misleading representations. In addition, other Class members will continue to purchase the Products, reasonably but incorrectly, believing that they are all natural and free from preservatives.

## DEFENDANT

10.    Defendant Oakberry Inc. is a Florida corporation with its principal place of business in Miami, Florida. Defendant Oakberry Acai Inc. is one of the largest producers of açaí bowls and products worldwide. Defendant operates over seven hundred (700) stores worldwide containing the Products challenged in this Complaint. In December 2023, Defendant announced that it intends to have more than 200 U.S. locations by 2026.[2] Defendant sells the Products throughout California, including in this district specifically.

## FACTUAL ALLEGATIONS

11.    Defendant, a prominent multinational company sells Oakberry branded açaí products, including the challenged Products.

12.    Unfortunately for consumers, Defendant engages in false and misleading advertising regarding the Products to gain a competitive edge in the market, all at the expense of unsuspecting consumers.

13.    As outlined in more detail below, Oakberry has marketed and advertised the Products as "All Natural" and "Free from Preservatives" through various channels, including in-store signage, at the point of sale, on its own website, and through various promotional materials.

///

///

///

---

[2] https://www.reuters.com/business/retail-consumer/acai-chain-oakberry-raises-67-mln-btg-funds-global-expansion-boost-2023-12-22/

14. Despite the online and in-store "All Natural" and "Free from Preservatives" marketing and advertising, and unbeknownst to consumers, the Products contain citric acid.

15. Citric acid, an artificial preservative and flavoring made from the fermentation of *Aspergillus niger*, a type of black mold contradicts the 'All Natural' and 'Free from Preservatives' marketing.

16. Defendant uses artificially manufactured citric acid in the Products. Commercial food manufacturers use a synthetic form of citric acid that is derived from heavy chemical processing.[3] Commercially produced citric acid is manufactured using a type of black mold called *Aspergillus niger* which is modified to increase citric acid production.[4] This is because "[a]proximately 99% of the world's production of [citric acid] is carried out using the fungus *Aspergillus niger* since 1919."[5] Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[6] As explained by the study published in the *Toxicology Reports Journal*:

> Citric acid naturally exists in fruits and vegetables. However, it is **_not_ the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive**.

---

[3] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/

[4] *Id*; Pau Loke Show, *et al.*, *Overview of citric acid production from Aspergillus niger,* FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), *available at* https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

[5] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

[6] *Id*.

-5-

Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergilus niger* is a known allergen.[7]

17.    A technical evaluation report for citric acid compiled by the United States Department of Agriculture Marketing Services ("USDA AMS") further explains that it is not commercially feasible to use natural citric acid extracted from fruits:

> "Traditionally by extraction from citrus juice, [is] no longer commercially available. It is now extracted by fermentation of a carbohydrate substance (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid."[8]

18.    As one of the USDA AMS reviewers commented:

> "[Citric acid] is a natural[ly] occurring substance that commercially goes through numerous chemical processes to get to [its] final usable form. This processing would suggest that it be ***classified as synthetic***."[9]

19.    When asked, "Is this substance Natural of Synthetic?" USDA AMS reviewers state: "synthetic."[10]

20.    The FDA sent warning letters to Hirzel Canning Company and Oak Tree Farm Dairy, Inc., for similar violations, saying that the FDA's policy involving the use of the word natural means that nothing artificial or synthetic has been added to the product, and that a product that labels itself "100% Natural" or "All Natural" violates that policy if it contains citric acid, and that the presence of citric acid precludes the use of the term natural to describe the product.[11] Thus, the FDA and

---

[7] *Id*. (emphasis added).
[8] **Exhibit A** at page 6.
[9] **Exhibit A** at page 5 (emphasis added).
[10] **Exhibit A** at pages 4-5.
[11] *See* **Exhibit B** at page 2 and **Exhibit C** at page 2.

other federal agencies have acted under the accordance that manufactured citric acid as an artificial ingredient that is not natural.[12]

21.    The FDA explains that the "Solvent extraction process for citric acid" is accomplished via "recovery of citric acid from conventional *Aspergillus niger* fermentation liquor may be safely used to produce food-grade citric acid in accordance with the following conditions: (a) The solvent used in the process consists of a mixture of *n-* octyl alcohol meeting the requirements of § 172.864 of this chapter, **synthetic** isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine. 12 C.F.R. § 173.280 (emphasis added). Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *Aspergillus niger* fermentation liquor. *See* 21 C.F.R § 173.280. The citric acid that Defendant uses in the Products are produced through chemical solvent extraction and contains residues of those chemical solvents.

22.    Dictionary definitions define "artificial" as something made by man. For example, "artificial" is defined as "made by human skill; produced by humans …"[13] Merriam-Webster's online dictionary states that "artificial" means "humanly contrived …"[14] Cambridge Dictionary states that "artificial" means "made by people, often as a copy of something natural."[15]

23.    Below are images of the chemical process used to create citric acid for use in food – a process that is visibly artificial:

///

---

[12] *See also* U.S. International Trade Commission, Synthetic Organic Chemical Index, USCTIC Pub. 2933, at 3-105 (Nov. 1995) (listing citric acid as synthetic).
[13] *Artificial*, DICTIONARY.COM, *available at* https://www.dictionary.com/browse/artificial
[14] *Artificial*, MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriamwebster.com/dictionary/artificial
[15] *Artificial*, CAMBRIDGE DICTIONARY, *available at* https://dictionary.cambridge.org/us/dictionary/english/artificial






24.    Citric acid acts as an artificial flavoring and preserving agent when added to food products, including the Products at issue.[16] Citric acid has a sour, acidic, and slightly tart flavor.[17]

25.    The Food and Drug Administration ("FDA") defines a preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R.

---

[16] https://www.webstaurantstore.com/blog/3350/what-is-citricacid. html#:~:text=What%20Is%20Sour%20Salt?,salt%20tastes%20sour%20and%20acid ic.

[17] *Id.*

§101.22(a)(5). The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[18]

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

26.    The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "common **chemical** preservatives include BHA, BHT, calcium propionate, **citric acid**, natamycin and sodium propionate."[19] Thus, the Products are not "All Natural" and "Free from Preservatives".

27.    Indeed, as portrayed below, Oakberry's "All Natural," "100% Natural," and "Free from Preservatives" marketing and advertising is central to the Products' identity.

**A. Oakberry's Marketing and Advertising Misleads Consumers**

> a.  Oakberry's Promotional Material, In-Store Signage, and Menu Prominently Advertise the Products as All Natural

28.    Oakberry prominently advertises its Products as "All Natural" and "100% Natural" on its freestanding promotional signs outside of its stores. *See examples below.*

///

---

[18] *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/foodingredients-packaging/overview-food-ingredients-additives-colors

[19] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf (emphasis added)



CLASS ACTION COMPLAINT

1    29.    Moreover, Oakberry continues to prominently advertise its Products as
2  "All Natural" in-store through retail advertising displays and posters. *See examples*
3  *below*.



30.    Additionally, Oakberry promotes on its in-store menu that its açaí Products are all-natural, emphasizing this claim even at the point of sale.





31.     Based on the Products' marketing and advertising, reasonable consumers purchase the Products with the expectation that the Products contain only all natural ingredients with no preservatives.

b. Oakberry's Online Advertising and Website Prominently Advertise the Products as All Natural

32.     Moreover, Oakberry's online marketing and advertising reinforces the in-store claims, touting the purported fact that the Products are made with "All Natural" ingredients and are "Free from Preservatives". *See examples below*.









33.    However, unbeknownst to consumers, the Products are neither all natural nor free from preservatives.

34.    This is not what consumers expect when it comes to Oakberry açaí Products. Consumers expect Oakberry Products to live up to their all natural, 100% natural, and free from preservatives representations.

35.    Notably, Oakberry does not disclose at the point of sale or in-store that the Products include preservatives and are not all natural. Consequently, consumers have no reasonable basis to believe or anticipate that the Products differ from Oakberry's claims that they are all natural and preservative-free.

36.    The reasonable belief that the Products are all natural and contain no preservatives was a significant factor in Plaintiff and other class members' decisions to purchase the Products. All natural and free from preservatives representations are important to consumers because consumers expect to receive premium ingredients, and consumers value them over the less premium and cheaper non-natural ingredients (such as citric acid) found in the Products. Thus, Oakberry promises premium products, but provides consumers with cheaper, less premium alternatives.

37.    As the entity responsible for the development, naming, manufacturing, advertising, distribution and sale of the Products, Defendant knew or should have known that the Products falsely and deceptively represent to contain certain ingredients that they do not contain.

38.    Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendant's advertising. Nonetheless, Defendant deceptively advertises the Products in order to deceive consumers and gain an unfair advantage in the market.

39.    Consumers are willing to pay more for the Products based on the belief that the Products are natural and free from preservatives. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that the truth about them. Thus, through the use of misleading representations, Defendant commands a price that Plaintiff and the Class would not have paid had they been fully informed.

40.     Therefore, Plaintiff and other consumers purchasing the Products have suffered financial injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

## **CLASS ACTION ALLEGATIONS**

41.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**Nationwide Class**

All consumers who purchased any of the Products within the applicable statute of limitation within the United States ("Nationwide Class").

**California Class**

All consumers who purchased any of the Products within the applicable statute of limitation within California ("California Class").

**California Consumer Subclass**

All consumers who purchased any of the Products for personal, family, or household purposes, within the applicable statute of limitations period within California ("California Consumer Subclass") (together with the Nationwide Class and the California Class, the "Classes").

42.     Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

///

///

///

-17-

43.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

44.    Plaintiff is a member of all the Classes.

45.    **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by the Defendant's records. At a minimum, there likely are thousands of Class members.

46.    **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

  a.  whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

  b.  whether reasonable consumers would rely upon Defendant's representations about the Products and reasonably believe the Products were all natural and/or free from preservatives;

  c.  whether Defendant knew or should have known its representations were false or misleading;

  d.  whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

  e.  whether certification of each Class is appropriate under Rule 23;

  f.  whether Plaintiff and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief; and

  g.  the amount and nature of the relief to be awarded to the Plaintiff and the Classes, including whether Plaintiff and the Classes are entitled to punitive damages.

CLASS ACTION COMPLAINT

47.    **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Products and relied on the representations made by the Defendant about the Products prior to purchasing the Products. Plaintiff and the members of each Class paid for Defendant's Products and would not have purchased them (or would have paid substantially less for them) had they known that the Defendant's representations were untrue.

48.    **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

49.    **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

50.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendant.

51.    **Declaratory and Injunctive Relief:** Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendant has acted or

refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. Unless a class-wide injunction is issued, Defendant will continue to advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Classes will continue to be misled, harmed, and denied their rights under the law.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq*.**
**(*For the California Consumer Subclass*)**

52.    Plaintiff repeats the allegations contained in paragraphs 1-39 above as if fully set forth herein.

53.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

54.    The Products are "good[s]" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

55.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have[.]" By using representations about the Products being all natural and free from preservatives, Defendant has represented and continues to represent that the Products did not contain non-natural ingredients or preservatives (i.e., does not contain citric acid). Therefore, Defendant has violated and continues to violate section 1770(a)(5) of the CLRA.

-20-

CLASS ACTION COMPLAINT

56.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By making all natural and no preservative representations when marketing and advertising the Products, Defendant has represented and continues to represent that the Products are of a particular standard and do not contain non-natural ingredients and are free from preservatives, when neither of those representations are true because the Products contain citric acid). Therefore, Defendant has violated and continues to violate section 1770(a)(7) of the CLRA.

57.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing and advertising the Products as all natural and free from preservatives, and not delivering Products as such, Defendant has advertised the Products with characteristics it intended not to provide to consumers. As such, Defendant has violated and continues to violate section 1770(a)(9) of the CLRA.

58.    At all relevant times, Defendant has known or reasonably should have known that the marketing and advertising of its Products with all natural and free from preservative representations are false and deceptive, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on these representations when purchasing the Products. Nonetheless, Defendant deceptively advertises the Products as such in order to deceive consumers into believing they are all natural and/or free from preservatives.

59.    Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

60.     Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products are not all natural and/or free from preservatives.

61.     Under Cal. Civ. Code § 1782, on October 9, 2024, the undersigned counsel sent Defendant a notice letter through certified mail, notifying Defendant of its violations under the CLRA (as well as other statutes and laws). More than 30 days have passed since Defendant's receipt of that notice letter, yet Defendant has refused to cure its false and deceptive conduct on a class-wide basis. As such, this Complaint seeks damages under the CLRA, as well all other available remedies. Because Defendant has failed to fully rectify the issues within 30 days after receipt of the notice and demand letter, Plaintiff timely filed this Class Action Complaint for a claim for damages under the CLRA.

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500, *et seq***
**(*For the California Class*)**

62.     Plaintiff repeats the allegations contained in paragraphs 1-39 above as if fully set forth herein.

63.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

64.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

65.    Defendant has represented and continues to represent to the public, including Plaintiff and members of the proposed California Class, through its deceptive marketing and advertising, that the Products are of a particular standard and do not contain non-natural ingredients and are free from preservatives, when that is not true. Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated the FAL.

66.    As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the California Class. Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to her and members of the proposed California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

## THIRD CLAIM FOR RELIEF
### Violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.* (*For the California Class*)

67.    Plaintiff repeats the allegations contained in paragraphs 1-39 above as if fully set forth herein.

68.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California Business & Professions Code § 17200.

69.    The UCL, Cal. Bus. & Prof. Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising[.]"

70.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and members of the proposed California Class.

71.    Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the marketing and advertising. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the proposed California Class.

72.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because, due to the Products' all natural and free from preservatives representations, it has the effect of deceiving consumers into believing the Products do not contain non-natural ingredients and are free from preservatives (i.e., does not contain citric acid). Because Defendant misled Plaintiff and members of the California Class, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the California Class.

73.    Plaintiff requests that the Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to her, and members of the proposed California Class, to disgorge the profits Defendant made on these

transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

## FOURTH CLAIM FOR RELIEF
### Breach of Express Warranty
### Cal. Com. Code § 2313
### (*For the California Class*)

74.     Plaintiff repeats the allegations contained in paragraphs 1-39 above as if fully set forth herein.

75.     Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for breach of express warranty under Cal. Com. Code § 2313.

76.     California's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

77.     Defendant has expressly warranted on the Products' marketing and advertising that the Products contain all natural ingredients and/or are free from preservatives. However, as alleged herein, these express representations are false and misleading. The Products do not contain all natural ingredients and/or are free from preservatives.

78.     Defendant's all natural and free from preservative representations on the Products' marketing and advertising are: (a) affirmations of fact or promises made by Defendant to consumers that the Products are all natural and/or free from preservatives; (b) became part of the basis of the bargain to purchase the Products

when Plaintiff and other consumers relied on the representations; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product descriptions.

79.     Plaintiff and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties and are not all natural and/or free from preservatives.

80.     Defendant has breached the express warranties made to Plaintiff and members of the California Class by failing to provide the Products with all natural and free from preservatives ingredients as promised in the Products' marketing and advertising.

81.     Plaintiff and members of the California Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the California Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with them. As a result, Plaintiff and members of the California Class suffered injury and deserve to recover all damages afforded under the law.

82.     Upon discovery this breach, on November 9, 2024, Plaintiff, through the undersigned counsel notified Defendant of its breach of warranty by way of a notice letter outlining the foregoing allegations.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**Cal. Com. Code § 2313**
**(*For the California Class*)**

83.     Plaintiff repeats the allegations contained in paragraphs 1-39 above as if fully set forth herein.

84.     Plaintiff brings this claim individually and on behalf of the members of

-26-

the California Class against Defendant.

85.    California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

86.    California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

87.    Defendant is a merchant with respect to the sale of Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

88.    By advertising the Products with representations as all natural and/or free from preservatives, Defendant made an implied promise that the Products were all natural and/or free from preservatives. However, the Products have not "conformed to the promises" because the Products are not all natural and/or free from preservatives. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendant. Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

89.    If Plaintiff and members of the California Class had known that the Products' all natural and/or free from preservative representations were false and misleading, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

90.    On October 9, 2024, the undersigned counsel notified Defendant of its breach of warranty by way of a notice letter outlining the foregoing allegations.

## SIXTH CLAIM FOR RELIEF
### Quasi Contract/Unjust Enrichment/Restitution
### (*for the Nationwide Class; alternatively, for the California Class*)

91.    Plaintiff repeats the allegations contained in paragraphs 1-39 above as if fully set forth herein.

92.    Plaintiff brings this claim individually and on behalf of the Nationwide Class, or in the alternative on behalf of the California Class.

93.    As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the Classes to induce them to purchase the Products. Plaintiff and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits (i.e., Products that are all natural and free from preservatives) promised by Defendant through the Products' all natural and/or free from preservative representations. Plaintiff and members of the proposed Classes have therefore been induced by Defendant's misleading and deceptive representations about the Products, and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

94.    Plaintiff and members of the proposed Classes have conferred a benefit upon Defendant as Defendant has retained monies paid to it by Plaintiff and members of the proposed Classes.

95.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the proposed Classes—i.e., Plaintiff and members of the proposed Classes did not receive the full value of the benefit conferred upon Defendant. Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon it.

96.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the proposed Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits,

-28-

1 and other compensation obtained by Defendant from its deceptive, misleading, and
2 unlawful conduct as alleged herein.

3 **PRAYER FOR RELIEF**

4 **WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes,
5 respectfully prays for the following relief:

6 A.     Certification of this case as a class action on behalf of the proposed
7 Classes defined above, appointment of Plaintiff as Class representative, and
8 appointment of her counsel as Class Counsel;

9 B.     A declaration that Defendant's actions, as described herein, violate the
10 claims described herein;

11 C.     An award to Plaintiff and the proposed Classes of restitution and/or other
12 equitable relief, including, without limitation, restitutionary disgorgement of all
13 profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed
14 Classes as a result of its unlawful, unfair and fraudulent business practices described
15 herein;

16 D.     An award of all economic, monetary, actual, consequential, and
17 compensatory damages caused by Defendant's conduct;

18 E.     An award of nominal, punitive, and statutory damages;

19 F.     An award to Plaintiff and her counsel of reasonable expenses and
20 attorneys' fees;

21 G.     An award to Plaintiff and the proposed Classes of pre and post-judgment
22 interest, to the extent allowable; and

23 H.     For such further relief that the Court may deem just and proper.

24 **DEMAND FOR JURY TRIAL**

25 Plaintiff, on behalf of herself and the proposed Classes, hereby demands a jury
26 trial with respect to all issues triable of right by jury.

27 ///
28 ///

CLASS ACTION COMPLAINT

DATED: August 5, 2025

                                         **TREEHOUSE LAW, LLP**

                                         By: */s/ Joseph Hakakian*

                                         Joseph Hakakian (SBN 323011)
                                         Benjamin Heikali (SBN 307466)
                                         Ruhandy Glezakos (SBN 307473)
                                         Joshua Nassir (SBN 318344)
                                         3130 Wilshire Blvd. Suite 555
                                         Santa Monica, CA 90403
                                         Telephone: (310) 751-5948
                                         jhakakian@treehouselaw.com
                                         bheikali@treehouselaw.com
                                         rglezakos@treehouselaw.com
                                         jnassir@treehouselaw.com

                                         *Attorneys for Plaintiff and the*
                                         *Putative Classes*

-30-

## Venue Declaration Pursuant to Cal. Civ. Code 1780(d)

I, Yolanda Jean Pitre, declare as follows:

1.      I am the named Plaintiff in the above-captioned action and am a citizen of the State of California. I have personal knowledge of the facts set forth in this declaration and am competent to testify to the same. The matters set forth herein are true and correct to the best of my knowledge and belief.

2.      Pursuant to California Civil Code Section 1780(d), I believe that the Central District of California is the proper place for trial of this case because Defendant conducts business in this District. Thus, a substantial part of the events or omissions giving rise to the claims at issue in this case occurred in this District.

I declare under penalty of perjury that the foregoing is true and correct, executed on ___08/05/2025___ in San Mateo, California

_____
Yolanda Jean Pitre